UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRISTINA M. ASKINS,                )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        Case No. 4:19CV2612 HEA
                                    )
ANDREW M. SAUL,                     )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.* and denial of supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381, *et seq.* The Court has reviewed the filings and the administrative record as a whole which includes the hearing transcript and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff protectively filed for Disability Insurance Benefits and Supplemental Security Income on June 29, 2016, alleging disability beginning March 24, 2016. She received an initial denial on December 22, 2016. Plaintiff filed a timely Request for Hearing on January 12, 2017. She attended a hearing

before ALJ Chandreka Allen on July 26, 2018.  The ALJ rendered an unfavorable

decision dated November 19, 2018. In the decision, the ALJ found Plaintiff had the

severe impairments of status post meningioma resection, osteoarthritis of the

bilateral knees, osteoarthritis of the cervical spine, status post left shoulder

arthroscopy, attention deficit hyperactivity disorder (ADHD), depression, and

anxiety. While the ALJ found none of Plaintiff's impairments met or equaled a

listed impairment, she did find some limitations. Specifically, the ALJ found

Plaintiff retained the residual functional capacity ("RFC") to perform:

> sedentary work … She is able to lift, carry, push, and pull ten pounds
> occasionally and less than ten pounds frequently. She is able to sit for 7
> hours, stand and walk for 1 hour in an 8-hour day. She is limited to frequent
> reaching with the left arm and occasional overhead reaching with the left
> arm. She can occasionally stoop, but never kneel, crouch, or crawl. She can
> occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.
> She must have no hazardous machinery and is limited to simple, routine,
> repetitive tasks.

Based on vocational expert testimony, the ALJ found Plaintiff could perform

work such as stuffer, inspector, and table worker.

Plaintiff filed a timely Request for Review of Hearing Decision on

December 11, 2018. The Appeals Council, on July 23, 2019, denied the request.

Plaintiff has exhausted all administrative remedies. Thus, the decision of the ALJ

stands as the final decision of the Commissioner.

## **Hearing Testimony**

On July 26, 2018, Plaintiff appeared and testified at a hearing before ALJ Chandreka Allen. Plaintiff testified that eighth grade was the highest grade she completed; she did not get a GED. The last time Plaintiff worked was in 2016 doing home health for her mother. Plaintiff testified that she also worked as a caregiver for Shepherd care for quite a few years.

Plaintiff testified that she has problems with both knees which qualify her for knee replacement surgery, but she cannot have the surgery until she loses 200 pounds. Plaintiff testified that she currently weighed 430 pounds and was 5 foot, 6 inches tall, but her insurance will not cover bariatric surgery. Plaintiff testified that her knee pain is "very debilitating" and affects "pretty much everything [activity.]" She testified that walking and standing make the pain worse. She testified that she has no difficulty sitting, but that when she gets up from a sitting position, her knees are very stiff and cause more pain.

Plaintiff testified that she also had a tear in her left shoulder, for which she had arthroscopic surgery in 2016, and has some neck issues. Plaintiff testified that she has residual pain in her left shoulder and that "anytime" she uses her left arm, it hurts. As examples of things that might hurt her left arm, Plaintiff provided folding laundry, cleaning, and "anything like that." Plaintiff testified that overhead reaching is painful, as is lifting, and said she could lift 10 pounds with her left arm and 20 with her right. Plaintiff testified that she has herniated discs in her neck that

3

cause sharp, shooting pain in her neck, shoulders, arms, fingers, and down her back. Plaintiff testified that she experiences this pain every day and that is worse with activity, such as folding laundry and lifting. She testified that she has had some physical therapy for her back, but it helps for a little, but then the pain returns after a while.

Plaintiff reported experiencing pain "all over," in her arms, hips, back, and legs all day long, every day. She takes Gabapentin, though she said it may lessen the pain "but the pain is always there." Plaintiff rated this pain as about an 8 out of 10, with 10 being "going to the emergency room."

Plaintiff testified that she has fatigue every day, all day. She testified to taking naps about once a day in the afternoon for two to four hours. Plaintiff testified that she goes to bed around 9 or 10 p.m. and gets up around 9 or 10 a.m., but sometimes sleeps until noon. On days she doesn't wake up early, her husband takes care of their daughter.

Plaintiff testified that she is being treated for depression. She testified that she has difficulty concentrating or focusing, specifically with "remembering stuff" and "concentrating on things that I need to do." Plaintiff testified that she can focus on a half-hour television show and that she forgets what she sees on the television. She testified that her mood is depressed every day. Plaintiff testified that she had been on several medications that didn't help, and that she recently started Trintellix

and Vraylar but it was too early to tell if they were working. She also gets irritated when she becomes aggravated. Plaintiff testified that she cries every day.

Plaintiff testified that she has been diagnosed with anxiety and feels that her anxiety and depression are very debilitating. Plaintiff has anxiety attacks which she described as "when I get upset, I get very anxious, become more depressed." She testified that when she gets depressed or anxious, she goes to bed.

Plaintiff testified that she uses a CPAP for sleep apnea but felt that she doesn't get any rest with it because she is constantly adjusting the mask and waking up with discomfort and unable to get air. Her doctors increased the air pressure and changed the mask but that wasn't helpful. Plaintiff felt that her fatigue during the day is related to both her depression and sleep apnea.

Plaintiff testified that she had a meningioma taken out of the left frontal lobe of her brain in August 2016, and that since then, she gets headaches and pain on the left side of her skull. She testified that once or twice a month, the headaches feel like migraines but that she always has a constant, low grade headache. She said that when the headaches feel like migraines, she lays down and goes to sleep.

A vocational expert also testified at the hearing and provided vocational interrogatory responses after the hearing.

## Legal Standard

To be eligible for DBI under the Social Security Act, Plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).

The claimant bears the burden through Step Four of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v.*

7

*Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

## Decision of the ALJ

At Step One of the of the decision from November 19, 2018, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 24, 2016, the alleged onset date. At Step Two, the ALJ found that Plaintiff had the severe impairments of status post meningioma resection, osteoarthritis of the bilateral knees, osteoarthritis of the cervical spine, status post left shoulder arthroscopy, attention deficit hyperactivity disorder (ADHD), depression, and anxiety. The ALJ found Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings, 20 C.F.R. part 404, subpart P, appendix 1, (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ determined that Plaintiff retained the residual functional capacity to perform sedentary work subject to the following limitations: Plaintiff is able to lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently.

Plaintiff is able to sit for 7 hours, stand and walk for 1 hour in an 8-hour day. Plaintiff is limited to frequent reaching with the left arm and occasional overhead reaching with the left arm. Plaintiff can occasionally stoop, but never kneel, crouch, or crawl. Plaintiff can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. Plaintiff must have no hazardous machinery and is limited to simple, routine, repetitive tasks.

At Step Four, the ALJ found Plaintiff unable to perform her past relevant work as a home attendant. At Step Five, the ALJ found that there are jobs that exist in significant number in the national economy that Plaintiff could perform, such as stuffer, inspector, and table worker. Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether the ALJ failed to apply a proper legal standard related to Plaintiff's moderate deficiencies in concentration, persistence, or pace, and (2) whether the ALJ committed reversible error by not considering Plaintiff's obstructive sleep apnea to be a severe impairment.

## Discussion

### 1. Did the ALJ apply the correct legal standard related to Plaintiff's moderate deficiencies in concentration, persistence, or pace?

In her decision, the ALJ determined that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace that is consistent with her diagnosis of ADHD. As evidence supporting this limitation, the ALJ noted that Plaintiff told her psychiatrist that she found focus and concentration to be very difficult and that in her function report, Plaintiff reported having problems with concentrating and completing tasks. The ALJ also noted Plaintiff's testimony that she could concentrate on a half hour television show. The ALJ restricted Plaintiff to simple, routine, and repetitive tasks based on her limitations and included that restriction in the RFC and in her hypothetical question to the vocational expert ("VE").

Plaintiff argues that although the ALJ included the limitation to "simple, routine, repetitive tasks" in her hypothetical question to the VE, that limitation does not "adequately capture a claimant's moderate limitations in concentration, persistence or pace." Plaintiff contends that the Eighth Circuit's holding in *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996), that an ALJ's RFC limitation to "simple jobs" was insufficient to capture a claimant specifically documented limitations in concentration, persistence, or pace is "the proper legal standard" and

10

that the ALJ erred in not applying that holding to the instant case. This Court

reviews *de novo* a question of whether the ALJ based her decision on a legal

error. *Dewey v. Astrue,* 509 F.3d 447, 449 (8th Cir.2007). After review of the

relevant case law, this Court rejects Plaintiff's contention that *Newton* represents a

blanket rule that the existence of moderate limitations in concentration,

persistence, and pace, necessitate that an ALJ's hypothetical question to a VE *must*

include something more than a limitation to "simple, routine, repetitive tasks."

      The overarching legal standard for a hypothetical question, as articulated in

*Newton*, is as follows:

> A hypothetical question must precisely describe a claimant's
> impairments so that the vocational expert may accurately assess
> whether jobs exist for the claimant. *Smith v. Shalala,* 31 F.3d 715, 717
> (8th Cir.1994). A vocational expert cannot be assumed to remember
> all of a claimant's impairments from the record. *Whitmore v.
> Bowen,* 785 F.2d 262, 263–64 (8th Cir.1986). An expert's testimony
> based upon an insufficient hypothetical question may not constitute
> substantial evidence to support a finding of no disability. *Id.*

92 F.3d at 694–95. The claimant in Newton had numerous limitations that were

specifically documented by two doctors, namely moderate or marked deficiencies

in "his ability to carry out detailed instructions, maintain attention and

concentration for extended periods, perform activities within a schedule, maintain

regular attendance, be punctual within customary tolerances, complete a normal

work week, perform at a consistent pace without an unreasonable number and

length of rest periods." *Id.* at 695. On the other hand, in *Howard v. Massanari*, 255

F.3d 577, 582 (8th Cir. 2001), the Eighth Circuit held that a hypothetical question to a VE concerning someone who was capable of doing "simple, repetitive, routine tasks" adequately captured the claimant's deficiencies in concentration, persistence or pace. Notably, the record in *Howard* included a doctor's opinion that the claimant was "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function."

Here, no opined limitations or specific allegations of limiting symptoms regarding concentration, persistence, or pace exist in the record. The record includes only Plaintiff's ADHD diagnosis and her subjective statements that she finds focus and concentration to be very difficult, that she has problems with concentrating and completing tasks, and that she can concentrate on a half hour TV show. The sole psychological opinion evidence, given by James Morgan, PhD, provides for no limitations in concentration, persistence and pace. However, the ALJ credited Plaintiff's complaints of troubles with focus and concentration and accounted for them in the hypothetical question to the VE by including a limitation to simple, repetitive, routine tasks. This limitation adequately captures Plaintiff's limitations as supported by evidence in the record. The ALJ did not apply an incorrect legal standard.

**2.  Did the ALJ's commit reversible error by failing to consider Plaintiff's obstructive sleep apnea a severe impairment?**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence in the record because the ALJ did not consider Plaintiff's obstructive sleep apnea ("OSA") to be a "severe impairment" at Step 2 based on the ALJ's finding that OSA does not result in significant functional limitations. Relatedly, Plaintiff argues that the ALJ failed to include obesity as a sever impairment, given that "that substantial evidence shows [Plaintiff's] level of obesity leads to other obesity-related impairments and limitations, including pain and obstructive sleep apnea (OSA) with fatigue." These failing, according to Plaintiff, "necessarily influenced the ALJ's analysis at subsequent steps inasmuch as the decision that Plaintiff's OSA is not severe essentially removed such alleged impairments from further consideration."

A severe impairment is defined in the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, and include, among other things, the

capacity for understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and unusual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b), 416.922. Although the requirement of severity is not an "onerous requirement," it is "not a toothless standard." *Kirby*, 500 F.3d at 707. It is Plaintiff's burden to prove the existence of severe impairments. *Id.*

Plaintiff notes that the record includes evidence that she consistently reported poor sleep quality and fatigue, even though she sleeps excessively. She also testified that she thinks her fatigue is related both to her OSA and depression and that she naps daily for 2 to 4 hours at a time. She argues that her symptoms of fatigue, insomnia, and excessive sleep have more than a minimal effect on her ability to perform basic work activities, such as the ability to reliably appear for work each day and to concentrate and persist at tasks.

It is possible that the ALJ erred in failing to find Plaintiff's OSA to be a severe impairment; however, even if she did so err, the error was harmless. Courts often find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Weed v. Saul*, No. 4:18-CV-001192-SPM, 2019 WL 4451259, at *4 (E.D. Mo. Sept. 17, 2019); *Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at

14

*3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). *See also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, to the extent that the ALJ erred in failing to find Plaintiff's OSA a severe impairment, the error was harmless because the ALJ proceeded with the analysis and considered all of Plaintiff's symptoms, including the pain, fatigue, excessive sleep, and insomnia which Plaintiff contends to be associated with OSA. The ALJ clearly considered these symptoms because they overlap entirely with Plaintiff's same symptoms flowing from other impairments which the ALJ did find

15

to be severe, including depression, osteoarthritis, and status post-meningioma resection. *Weed*, 2019 WL 4451259, at *4. In her decision, ALJ found Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of these symptoms to be inconsistent with the record evidence. Because these symptoms were considered in the context of the whole record by the ALJ and found to be not supported by substantial evidence on the record, any error in the non-designation of Plaintiff's OSA as a severe impairment had no effect of the ALJ's RFC determination and therefore was harmless.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).  The ALJ's opinion is supported by substantial evidence in the record, and therefore is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 7th  day of December, 2020.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE